## Choate, et al. v. Provident Savings Life Assurance Society.

(Decided December 19, 1919.)

### Appeal from Franklin Circuit Court.

1   Insurance—Contract in General.—A contract of insurance is to be treated like any other contract. It is true, such contracts are at times so worded that the rights of the parties are not easily determined; but when they are determined, they are enforced as other contracts.

2.  Insurance—Contract—Lien Upon Policy.—Where a "19 payment
whole life" policy of insurance upon which the last semiannual
premium had been paid by the insured, provided that should his
death occur within the premium paying period the beneficiary
should, in addition to its $3,000 paid up value, be paid a bonus
equivalent to the loan value of the policy at its last anniversary
"as set forth in the table of surrender values below," but that if
his death occurred after the premium paying period, only the
$3,000, the principal sum named in the policy, should be paid;
and the death of the insured did in fact occur after the premium
paying period ended and more than a year after the payment of
the last and final premium; in such state of case the beneficiaries
named in the policy were only entitled to be paid the $3,000, fixed
as the face value of the policy, to be credited by the principal
and interest of a note the insured had given the insurer for
certain reserve parts of the premiums payable, which was made
a lien on the policy; and as such was the judgment of the cir-
cuit court, it properly determined the right of the parties.

SCOTT & HAMILTON for appellants.

J. P. HOBSON and KEITH L. BULLITT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming

Robert S. Choate died in Franklin county, Kentucky,
in the year 1917, survived by his widow, the appellant,
Virginia Choate, and three children, the appellants,
Lula V., Leroy and J. S. Choate, all adults. At the time
of his death the decedent held on his life a policy of in-
surance in the appellee, Provident Savings Life As-
surance Society, of the face or paid-up value of
$3,000.00, of date June 15, 1891, payable at his death
to his widow and children, who, as the beneficiaries
named in the policy, brought this action in the court be-
low seeking to recover of the appellee $5,297.10, as the
amount of insurance claimed to be due them on the
policy, this amount being made up, as alleged in the pe-
tition, of the $3,000.00, stated in the face of the policy,
$1,767.00 by way of additions accumulated on the policy
from its issuance, June 15, 1891, down to June 15, 1911,
the date to which the last payment of premium carried
it, and the further sum of $530.10 by way of accumula-
tions on the policy after June 15, 1911.

The answer of appellee denied appellants' right to
the accumulations on the policy or any of them, claimed
in the petition; alleged that the value of the policy was

only $3,000.00; set up an indebtedness against the policy due appellee of $2,099.14 the principal and interest of a note for reserve premiums thereon executed by the insured, which deducted from the face value thereof would, as alleged, leave appellee owing only $900.86, and this amount it tendered appellants and offered to pay into court.

No proof was taken by the parties, and, following a motion by appellants in the circuit court to strike from the answer the paragraph appearing below in the opinion, the case was submitted in that court on the motion and pleadings. The court sustained the appellee's several contentions, hence appellants' motion to strike from the answer the paragraph objected to was overruled, and their recovery on the policy limited to the $3,000.00 named therein, with 6 per cent interest from August 24, 1917, and costs of the action, credited by the insured's indebtedness to the appellee of $2,089.29, with 5 per cent interest from December 1, 1917, thereby leaving due appellants on the policy the net balance of $900.86, admitted by the answer. From the judgment manifesting the above rulings the latter have appealed.

The only question urged for decision on the appeal must be determined by a construction of certain provisions of the policy before us. The question seems to be presented by the folowing averments of the answer which the circuit court refused to strike out: ''By reason of the failure of the insured, Robert S. Choate, to elect to discontinue the insurance, said insurance was, on June 15, 1911, by virtue of the provisions of said policy above set forth, continued as a paid-up contract during the life of Robert S. Choate for its full amount, to-wit, $3,000.00, without the payment of further premiums by him, and as there were no profits earned by, or properly belonging to, or apportioned or apportionable to said policy, or other participation policies then existing, said policy was, at the date of the death of Robert S. Choate, a contract for its full amount, to-wit, $3,000.00, and no more, charged with a lien on account of the loan hereinabove mentioned of $935.52 and interest accumulations thereon.''

Choate first obtained of the appellee in 1891 a renewable annual policy for $3,000.00, which he carried on his life until 1901. In that year appellee issued to him in lieu of the first policy, the policy now under considera-

tion, known as a 19 payment whole life policy. In order to give the insured the benefit of a lower rate of premium than would have been chargeable to him at his actual age in 1901, the new policy was dated back to June 15, 1891, and a note given by him to represent the reserve portion of the premiums that would have been paid by him if the policy had in fact been issued on June 15, 1891. The note when given amounted to $935.52, but at the institution of this action it amounted, with its accrued interest, to $2,099.14.

The premium on the first policy was payable semi-annually, i. e., $74.82, on June 15, 1891, the date of issue, and $74.82 on the following December 15, 1891, which would thus carry the policy to June 15, 1892. It was provided in the policy that if the insurance was kept up until June 15, 1892, that is if the December 15, 1891, half portion of the premium should be paid, the company would renew the policy as a "19 payment, whole life policy" upon the payment of $74.82, on June 15, and December 15, in each year "until such premiums for 19 years had been fully paid." Therefore the period between June 15, 1910, and June 15, 1911, would be the 19th year after June 15, 1892, so upon the payment of the semiannual premium due on December 15, 1910, the last installment of the premium for the 19th year would thereby be paid. Hence, under the expressed provisions of the policy, it became a whole life policy immediately upon the payment of the semiannual premium on December 15, 1910. That was the last premium the insured was compelled to pay in order that the policy might become a whole life policy. In other words the premium paying period began on June 15, 1892, and ended on December 15, 1910, after which date no further premiums of any kind were to be paid.

On page three of the policy is the following provision: "Should the death of the assured occur within the premium paying period hereunder and while this assurance is in force, the society then promises to pay to the beneficiaries, in addition to the face value of this policy, as defined above, an amount equal to the loan value of this policy at its last anniversary, as set forth in the table of surrender values below." This is followed by a table allowing certain loan values up to June 15, 1910, and no later. In the absence of this special provision it would

seem that upon the death of the insured, whenever it occurred, there would have been payable to the beneficiaries only the sum of $3,000.00, principal sum provided for in the policy. It also seems apparent that under that special provision the payment of the additional sum or sums was expressly contingent upon the death of the insured "within the premium paying period." Apparently, however, to make it doubly clear that the additional sum was to be paid only in the event that the "death of the insured occur within the premium paying period," the policy contained the following additional special provisions (appearing under the table setting forth the loan values) : "The last premium hereunder falls due upon the 15th day of December, 1910, upon payment of which this policy becomes paid up for life thereafter for its full face value of $3,000.00."

It is the contention of appellee that as the premium paying period ended at the moment the last premium was paid on December 15, 1910, under the provisions of the policy above quoted the amount to which the beneficiaries were entitled upon the occurrence of the death of the insured after December 15, 1910, was $3,000.00, and no more, and such was the holding of the circuit court.

Under the table of loan values on the third page of the policy it is provided that the accumulation period (as distinguished from the "premium paying period") should end on June 15, 1911, and that the entire terminal cash value of the policy on that date would be $1,908.00, which was available to the insured after he elected to abandon the polciy and take its equivalent in cash. At the bottom of the same page is the further provision that if the insured should, at the end of the accumulation period on June 15, 1911, wish to discontinue the insurance by cashing the policy in he might take its entire cash value of $1,908.00, or its value converted into an annual income for life. As the insured admittedly failed to exercise his right to surrender the policy for its cash value, the presumption must be indulged that he elected to take some other option given him under the policy, and the only remaining option provided for in the policy was that the insured might, at the end of the accumulation period on June 15, 1911, "continue this assurance as a paid up life contract for its full amount without the payment of further premiums  .  .  .  ,"

Obviously the words "continue this assurance as a paid up life contract for its full amount," mean a continuance of the insurance for the full amount which would be payable as a death claim if the insured died on or after the date at which the option became available. This meaning is also given the language refered to by this further provision also appearing under the table of loan values. ". . . This policy becomes paid up for life thereafter for its full face value of $3,000.00."

It would seem to follow from what has been said that the right to the additional insurance that might have accumulated on the policy was conditional upon the insured's dying "within the premium paying period," consequently when the premium paying period ended on June 15, 1911, without an exercise by the insured of the option then available, the full amount of the policy was $3,000.00, and only that amount was due thereon upon the death of the insured in 1917, subject, of course, to be reduced to the extent of the indebtedness owing by the insured to the appellee at the time of his death, which as we save seen, amounted to $2,099.14. The appellants' contention as to the amount to which they are entitled under the policy rests upon the theory that as the accumulations claimed would have been payable if the death of the insured had occurred prior to June 15, 1911, it would be unjust to relieve appellee of their payment merely because he died subsequent to that date. The contention is overthrown by the contract made by the parties themselves. It is the opposite of what is known as a semi-tontine policy contract under which there is payable a reduced amount if the insured dies within a certain period, and an increased amount if he dies after the expiration of the period. Under the plan of insurance contained in the policy sued upon there is payable an increased amount if the insured dies within a certain period and a reduced amount if he dies after the expiration of the period. It is not improper to add, however, that both plans of insurance have become practically obsolete, as in the light of modern insurance experience and development their inferiority has been strikingly demonstrated. However, the plan of insurance contained in the policy here involved was in vogue when the policy was issued and we are aware of no authority which declares such a policy invalid, nor have counsel cited any such authority. In Equitable Life Ins. Co. v. Coxby, 126 S. W. 142 (not else-

where reported) it is said: "There is nothing peculiar about a contract of insurance that entitles it to be treated different from any other contract. It is true, such contracts are at times so worded that the rights of the parties are not easily determined, but when they are determined they are enforced as other contracts. Here no such difficulty is encountered. The contract is plain, the rights of the parties agreed in advance, and the only questions open for determination here are how many premiums had been paid, and what was the present worth or cash surrender value of the paid up policy on April 30, 1907."

Although a part of the profits are alleged in the petition to have accumulated upon the policy since June 15, 1911, the right to such profits is not allowed by the terms of the policy and, besides, the allegation of the appellee's answer that there were no such profits, is uncontroverted.

As no legal ground is shown for disturbing the judgment, it is affirmed.